UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division



)
CARL R. SUMMERS, )
17189 Pickwick Drive )
Purcellville, Virginia 20132, )
 )
 Plaintiff, )
 )
v. ) Case No.: 1:12CV1493-LMB/TCB
 )
ALTARUM INSTITUTE, CORP., )
3520 Green Court, Suite 300 )
Ann Arbor, Michigan 48105, )
 )
 )
 Defendant. )
 )

### CIVIL COMPLAINT FOR EQUITABLE AND MONETARY RELIEF AND DEMAND FOR JURY TRIAL

Plaintiff Carl R. Summers, by and through counsel, hereby files suit against Defendant Altarum Institute ("Altarum") for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq.*, ("ADA").

### JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331, because this is an action arising under the laws of the United States, specifically, the ADA, 42 U.S.C. §§ 12101, *et seq.*

2. Summers has exhausted the administrative remedies available to him under 42 U.S.C. §§ 2000e, *et seq*, and all conditions precedent have occurred or been performed. The U.S. Equal Employment Opportunity Commission issued Summers a Notice of Right to Sue on September 28, 2012. This Complaint and Demand for Jury Trial is timely filed within the ninety

day period afforded by 42 U.S.C. §§ 2000e-5(f)(1).

3. Venue in this District and in this Division is appropriate pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(c), as Defendant Altarum has extensive and deliberate contacts in this District and Division, including an Altarum business location at 4401 Ford Avenue, Suite 800, Alexandria, Virginia, at which Plaintiff performed work during his tenure with Defendants.

## PARTIES

4. Plaintiff is a resident of the State of Virginia and a citizen of the United States.

5. Defendant Altarum is a domestic nonprofit corporation incorporated in Michigan that offers a variety of consulting and research services to private-sector companies and the federal government, and it provides the foregoing services out of its business location at 4401 Ford Avenue, Suite 800, Alexandria, Virginia.

6. Plaintiff is a "person" and "employee" as defined by the ADA, and Defendant is an "employer" as defined by the ADA.

## FACTUAL ALLEGATIONS

7. Summers began working for Altarum in its Alexandria, Virginia, office in or about July 2011. On or about July 12, 2011, Summers signed an 'Employee Agreement' that assigned all inventions to Altarum, confirmed Summers' promise not to disclose proprietary information, and required Summers to promise not to solicit clients or employees of Altarum for one year after termination.

8. Summers' position with Altarum was a Senior Analyst, which was a combination of researcher and statistician. His responsibilities included conducting research, data analysis, journal research, report writing, presentations, and SPSS programming.

9. Summers frequently commuted to the offices of one of Altarum's clients, the

Defense Centers of Excellence for Psychological Health and Traumatic Brain Injury ("DCoE"), which were located in Silver Spring, Maryland.

10. The DCoE project was equipped with the capacity to work remotely. Although DCoE supervisor Kathy Helmick generally preferred that contractors work at the offices during normal business hours, DCoE did permit contractors to bring their computers home and work remotely, like when putting in extra time on the project. There were no technological or other restrictions on working remotely.

11. Altarum's own general policy permitted its employees to work remotely so long as the client approved.

12. At no time has Altarum suggested that Summers had any performance problems, nor did he.

13. On or about October 17, 2011, Summers fell and injured himself on a MARC train while commuting to DCoE's office in Silver Spring, Maryland. When the train arrived at his stop, Summers stood up and slung his computer bag over his shoulder. Summers' computer bag contained two laptop computers in it. At the same time, Summers took a step toward the aisle of the train to exit, but lost his footing when he unknowingly stepped off a six-inch platform. Summers fell, landing on both knees, with his left knee bearing the brunt of the contact. The weight of his computer bag then caused him to fall back, which put sudden and severe stress on his right knee. Summers tried to stand up to exit the train, but collapsed immediately upon his attempt.

14. Summers was taken to Howard University Hospital, where the doctors determined that Summers had suffered a tibia plateau fracture in his left leg, which would require surgery to fit a metal plate, screws, and donated bone to his tibia. Summers also ruptured the quadriceps-

patellar tendon in his right leg, which would require surgery to drill a hole in the patella and refasten the tendons to the knee. Further, Summers suffered a fracture in his right ankle and a torn meniscus cartilage in his left knee.

15. The doctor restricted Summers from bearing any weight on his left leg for about six weeks. He further restricted Summers from driving for five months, and estimated that Summers might be able to walk normally in, at the earliest, seven months, although he would continue to have mobility issues and substantial pain when he walked. These estimates turned out to be accurate. The doctor initially estimated that Summers might regain complete mobility and walk free of pain within a year of his accident, but this was optimistic, as shown below.

16. Summers used various mitigating measures during his recovery. These included surgery, implanted medical devices, bed rest, pain medication, and physical therapy, which lasted for approximately seven months with physical therapy continuing to this day. He was also confined to sedentary positions and activities for several months; could only walk with the aid of a cast or brace for several months; and used a cane or crutch for several months. Without the use of these mitigating measures Summers would not have been able to walk at all, likely to this day.

17. While still at Howard University Hospital, Summers spoke to an HR Representative at Altarum regarding working from home and short-term disability. She also agreed to talk about accommodations that would allow Summers to return to work. The HR Representative suggested Summers take short term disability and focus on getting well again.

18. The HR representative failed to ever engage in accommodation discussions with Summers again.

19. A week later, on or about October 25, 2011, Summers sent an e-mail to his supervisors and colleagues, updating them about his expected recovery and expressing his hopes

to return to work quickly.

20. In the first few weeks after Summers' injury, he sent two or three other e-mails to his supervisors at both Altarum and DCoE. He sought advice as to the best way to proceed to returning to work. While still in the hospital, Summers inquired about working remotely full- or part-time, and also about short-term disability leave. Summers proposed a plan in which he would take short-term disability for a few weeks, then start working remotely part-time, and then increase his hours gradually until he was full-time again.

21. Call responded to the last of Summers' e-mails requesting information about flexibility in returning to work and instructed Summers not to discuss short-term disability issues with anyone from DCoE.

22. Summers filed the appropriate short-term disability papers with Lincoln Financial Group on or about October 28, 2011.

23. The insurance company approved Summers' short-term disability benefits on or about November 10, 2011. The benefits were effective from October 18, 2011, to January 16, 2012.

24. Altarum did not suggest any other reasonable accommodation, did not engage in the interactive process with Summers, and did not tell him that there was any problem with his plan for a graduated return to work.

25. On or about November 30, 2011, Call and Megan Johnson, a Human Resources Generalist for Altarum, informed Summers that Altarum was terminating Summers effective December 1, 2011, in order to place another analyst in his role at DCoE during his absence.

26. Call and Johnson stated to the effect of, "The client requested replacement and [Altarum] does not have another assignment for [Summers]." On information and belief, this

statement was untrue, and reflected a discriminatory motive, either by Altarum or by its customer, in which Altarum simply acquiesced without challenge, and without suggesting, proposing, or inquiring about reasonable accommodations.

27. Altarum offered Summers a severance of four weeks of salary in exchange for signing a Release and Waiver Agreement.

28. In a second letter to Summers, Altarum acknowledged that Summers' short-term disability benefits would continue through January 16, 2012.

29. Summers declined to sign the Release and Waiver Agreement.

30. At some point between December 16, 2011, and January 3, 2012, Altarum cut off Summers' short-term disability benefits, despite having reassured him in writing that the benefits would be paid through January 16, 2012.

31. On or about March 7, 2012, Summers filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") based on retaliation and disability discrimination.

32. On or about March 21, 2012, approximately three weeks after he filed a charge with the EEOC, Summers received a lump-sum payment for the balance of his short-term disability benefits that had been wrongly cut off. Altarum sent the payment without any documentation identifying its purpose.

33. To this day Summers continues to suffer from the residual effects of his disability. More than a year after his injury, he still has significant pain when climbing stairs, unlike most people in the general population. Also unlike most people, when Summers tries to carry as little as ten pounds up stairs, he has significant pain.

34. Summers still has not regained his previous level of balance, or a level equal to

that of most people. Summers cannot climb or descend more than two or three stairs safely without the use of a guardrail, although most people are not limited in this way.

## COUNT I
### Wrongful Discharge – Senior Analyst
### Title I of the Americans with Disabilities Act of 1990
### 42 U.S.C. §§ 12101, *et seq.*

35. Plaintiff incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

36. Plaintiff Summers is a "person" and an "employee," and Defendant Altarum is an "employer" and a "covered entity" as those terms are defined at 42 U.S.C. § 12111.

37. Because all the actions complained of took place after January 1, 2009, the definition of disability in this case is governed by the ADA Amendments Act of 2008, which greatly expanded that definition, and which requires that the terms be construed as broadly as possible. 42 U.S.C. § 12102(4)(A). Summers has an "actual disability" as now defined at 42 U.S.C. § 12102(1)(A) in that at all relevant time he had physical impairments that substantially limited one or more of his major life activities.

38. Summers' severe leg injuries substantially limited the functioning of his musculoskeletal system, and substantially limited his ability to walk, run, drive, climb stairs, and work in the broad range or class of jobs requiring walking, driving, or climbing. This is especially true when his condition is considered without regard to the mitigating measures he used, as the law now requires. 42 U.S.C. § 12102(4)(E)(i).

39. Summers' doctor estimated that Summers' recovery would require a minimum of seven months, with full recovery taking at least a year. For a period of several months, and even with mitigating measures, Summers could not even walk very short distances, like 50–100 feet, without pain. The pain gradually ameliorated, but to this day Summers cannot walk short distances without pain.

40. Prior to his termination Summers had notified Altarum of his injuries and resulting limitations, including notifying his supervisors and colleagues via telephone and via e-mail of his injuries and his minimum seven-month recovery.

41. At the time of Summers' discharge, he was performing his job at a level that met his employer's legitimate expectations.

42. Summers' discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. Altarum terminated Summers' employment after it learned of Summers' severe leg injuries, and informed Summers that Altarum was terminating him in order to "replace" his position during his absence.

43. Pursuant to 42 U.S.C. § 12112(a), it is unlawful for a covered entity to "discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . discharge of employees." It is also unlawful to deny employment opportunities to an otherwise qualified individual with a disability, if such denial is based on the need for a reasonable accommodation. 42 U.S.C. § 12112(b)(5)(B). Defendant violated both provisions.

44. Summers has been damaged as a result of Altarum's unlawful acts.

**COUNT II**
**Failure to Accommodate – Senior Analyst**
**Title I of the Americans with Disabilities Act of 1990**
**42 U.S.C. §§ 12101, *et seq.***

45. Plaintiff hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

46. Plaintiff Summers is a "person" and an "employee," and Defendant Altarum is an "employer" and a "covered entity" as those terms are defined at 42 U.S.C. § 12111.

47. Summers has an "actual disability" as that term is defined at 42 U.S.C. § 12102(1)(A), for the reasons set forth above.

48. During the entire period beginning when Summers severely injured his legs, Summers was and remains qualified and able to perform his duties as a Senior Analyst for Altarum and its client DCoE, with the reasonable accommodation of a temporary period of working remotely, a temporary period of part-time or light duty, the use of a wheelchair or scooter at work, additional medical leave, or some combination of the above.

49. In or about October of 2011, while in the hospital, Summers requested the reasonable accommodation of working remotely part-time and transitioning back to a full-time, on-site role as his recovery progressed.

50. Altarum failed to grant Summers' reasonable accommodation request to work remotely part-time and gradually increase his time until he fully recovered and was able to commute safely.

51. Altarum failed to engage in the interactive process and failed to suggest any other reasonable accommodation prior to terminating Summers' employment.

52. Summers is able to perform all his work duties from home, as his responsibilities primarily require only the use of a computer and a remote log-in via internet.

53. In or about October of 2011, Summers requested the reasonable accommodation of short-term disability leave while he began his recovery.

54. Though Altarum initially granted Summers short-term disability leave, it terminated Summers after approximately 30 days in order to "replace" his position during his absence.

55. Summers has been damaged as a result of Altarum's unlawful acts.

## PRAYER FOR RELIEF

Plaintiff Carl Summers prays this Honorable Court for judgment against Defendant and respectfully requests the following relief:

i. Judgment against Defendant in the amount of economic damages to be determined at trial, to include back pay, front pay, and compensatory damages;

ii. Reinstatement;

iii. A reasonable attorney's fee, litigation expenses, and the costs of this action; and

iv. Any other relief this Honorable Court deems just and proper to award.

## DEMAND FOR JURY TRIAL

Plaintiff Carl Summers demands a trial by jury for any and all issues proper to so be tried.

Plaintiff Carl R. Summers
*By Counsel*

/s/ R. Scott Oswald

David L. Scher, Esq.
VSB# 47634
R. Scott Oswald, Esq.
VSB# 41770
The Employment Law Group, P.C.
888 17th Street, NW, 9th floor
Washington, D.C. 20006
(202) 261-2806
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.com
dscher@employmentlawgroup.com
*Counsel for the Plaintiff Carl Summers*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 27th day of December, 2012, the foregoing Complaint for Equitable and Monetary Relief and Demand for Jury Trial was served via electronic mail upon:

Paul W. Coughenour
CLARK HILL PLC
500 Woodard Avenue
Suite 3500
Detroit, Michigan 48226
pcoughenour@clarkhill.com

Douglas R. Kay
Briglia Hundley Nutall & Kay PC
1921 Gallows Road
Suite 750
Vienna, VA 22182
dkay@bhnklaw.com

_____
David L. Scher, Esq.